1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT B.,[1]

                Plaintiff,

        v.

KILOLO KIJAKAZI,

                Defendant.

Case No.  20-cv-03840-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 26, 34

## I.    INTRODUCTION

Plaintiff Robert B. moves for summary judgment to reverse the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying his claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 26.  Defendant cross-moves to affirm.  ECF No. 34.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.[2]

## II.    PROCEDURAL HISTORY

On May 6, 2016, Plaintiff filed an application for Disability Insurance under Title II of the Social Security Act, with a disability onset date of November 4, 2015.  AR 76, 204-10.  Plaintiff alleged disability based on mood disorder, depression, anger, and anxiety.  AR 76.  The

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 14, 15.

United States District Court
Northern District of California

application was initially denied on October 3, 2016 and again on reconsideration on December 19, 2016.  AR 75-87, 88-104.  An Administrative Law Judge ("ALJ") held a hearing on May 17, 2019 and issued an unfavorable decision on June 7, 2019.  AR 17-74.  The Appeals Council denied Plaintiff's request for review on April 13, 2020.  AR 1-6.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

### III.  ISSUES FOR REVIEW

Plaintiff raises three issues on appeal: (1) the limitations assessed by the agency's consultative examiner, Sara Bowerman, Ph.D. would make it impossible to perform any sustained work, and the ALJ committed materially harmful error by rejecting the examiner's assessment in the absence of specific and legitimate reasons based on substantial evidence in the records as a whole; (2) the agency's vocational expert testified the limitations assessed by Plaintiff's treating licensed clinical social worker, Yelena Lavender, LCSW, would make it impossible to perform any sustained work, and the ALJ committed materially harmful error by rejecting the treating provider's assessment with insufficient reasons; and (3) the ALJ committed harmful legal error by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in this record as a whole.

### IV.  STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (simplified).  It means "more than a mere scintilla, but less than a preponderance" of the evidence. *Garrison*, 759 F.3d at 1009 (citation omitted).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

2

simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court may not substitute its own judgment for that of the ALJ." *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. The Court is "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V.   DISCUSSION

### A.   Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

United States District Court
Northern District of California

1   gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

2   involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and

3   citation omitted).  Here, the ALJ determined Plaintiff had not performed substantial gainful

4   activity since November 4, 2015.  AR 22.

5         At step two, the ALJ decides whether the claimant's impairment or combination of

6   impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

7   claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

8   (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

9   20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

10   impairments: "a mental impairment, variously diagnosed to include anxiety, bipolar disorder, and

11   marijuana abuse; obesity; obstructive sleep apnea; and back pain secondary to poor posture and

12   thoracic kyphosis."  AR 22.

13         At step three, the ALJ evaluates whether the claimant has an impairment or combination of

14   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

15   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

16   describe impairments that are considered "to be severe enough to prevent an individual from doing

17   any gainful activity." *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

18   medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3).

19   "For a claimant to show that his impairment matches a listing, it must meet all of the specified

20   medical criteria.  An impairment that manifests only some of those criteria, no matter how

21   severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

22   claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

23   to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

24   age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

25   did not have an impairment or combination of impairments that meets the listings.  AR 22.

26         If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

27   the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

28   despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

United States District Court
Northern District of California

United States District Court
Northern District of California

1   perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

2   that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

3   it." 20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

4   perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

5   determined Plaintiff has the RFC to

6          perform medium work as defined in 20 CFR 404.1567(c), except he
           can occasionally climb ramps and stairs, never climb ladders, ropes
7          and scaffolds, and can frequently balance, stoop, kneel, and crouch,
           and occasionally crawl; he can have occasional exposure to extreme
8          heat, unprotected heights, and moving mechanical parts, and
           occasional exposure to dusts, odors, fumes, and pulmonary irritants;
9          he is limited to simple, routine, repetitive tasks, not at a fast
           production pace; he can tolerate few changes in work setting and
10         make simple work-related decisions; and he can have occasional
           interaction with supervisors, and brief, superficial interaction with
11         coworkers and the public.

12  AR 26.  Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work.

13  AR 27-28, 32.

14         At step five, the burden shifts to the agency to prove that "'the claimant can perform a

15  significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting

16  *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely

17  on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt.

18  P, App. 2,[3] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).

19  "[A] vocational expert or specialist may offer expert opinion testimony in response to a

20  hypothetical question about whether a person with the physical and mental limitations imposed by

21  the claimant's medical impairment(s) can meet the demands of the claimant's previous work,

22  either as the claimant actually performed it or as generally performed in the national economy."

23  20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of

24

25  [3] The grids "present, in table form, a short-hand method for determining the availability and
    numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th
26  Cir. 2006) (citing *Tackett*, 180 F.3d at 1101).  They consist of three tables, for sedentary work,
    light work, and medium work, and a claimant's place on the applicable table depends on a matrix
27  of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.*
    "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not
28  disabled' based on the number of jobs in the national economy in that category of physical-
    exertional requirements."  *Id.*

Occupational Titles ("DOT").[4]  *Id.*  Here, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  AR 33.  As such, the ALJ determined Plaintiff is not disabled under the Act.  AR 34.

**B.      Opinion of Consultative Examining Psychologist, Sara Bowerman, Ph.D.**

On August 16, 2016, Sara Bowerman, Ph.D. evaluated Plaintiff at the request of the agency.  AR 450-55.  Plaintiff complained of a mood disorder, depression, and anxiety.  AR 450.  He stated he was not currently taking any medication.  *Id.*  Plaintiff said he was diagnosed with Attention Deficit Hyperactivity Disorder at age six or seven and was tested for special education as a child but did not qualify.  AR 451.  He graduated from high school and went to junior college for several semesters but did not complete most of it.  *Id.*  He attended culinary school at age 24. *Id.*

Plaintiff reported he had a history of terminations or leaving prior jobs because of anger outbursts.  AR 450-51.  He had mood swings from depression to irritability, insomnia, crying spells, feelings of hopelessness, difficulty with concentration, irritability, difficulty sleeping, and difficulty with motivation to complete daily activities.  AR 451.  He recently started seeing a counselor but denied a history of psychiatric hospitalization or drug and alcohol treatment.  *Id.*  He reported no history of substance abuse, but he used cannabis to calm himself.  *Id.*

Plaintiff said he lived by himself and regularly talked to gaming acquaintances on the internet but did not regularly visit anyone or have emotionally close friends.  AR 451-52.  He said he did his own shopping two or three times weekly without assistance, drove himself to appointments and for personal errands, washed the dishes, did the laundry, completed household tasks in a timely fashion, prepared his own meals, cared for his own grooming, managed a checking account, and enjoyed watching television and playing video games.  AR 452.

---

[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

United States District Court
Northern District of California

Dr. Bowerman observed that Plaintiff was adequately groomed and casually dressed, had clean clothing in good repair, had good hygiene, a normal gait, made normal movements, and had good eye contact. AR 453. Plaintiff had normal speech; logical, linear, and goal directed thought processes; normal thought content; described his mood as "apathetic at best"; had an irritable affect initially which gradually became more full range; denied suicidal or homicidal ideation; was oriented; appeared to have intellectual functioning in the high average range; and had mildly impaired memory, with the ability to remember six digits forward and four digits backward as well as five items after five minutes. *Id.* He had mildly impaired attention and concentration and was able to spell "world" forward but not backwards and could subtract serial 7s; his reasoning ability was at the abstract level; and his insight and judgment were deemed poor based on his statement that he would leave a stamped, addressed envelope lying on the sidewalk if he saw it. AR 453-54.

Dr. Bowerman diagnosed unspecified bipolar and related disorder and generalized anxiety disorder. AR 454. She opined that Plaintiff's ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions was mildly impaired; his ability to maintain concentration, attention, and pace was mildly impaired; his ability to respond to co-workers, supervisors, and the public was markedly impaired, as was his ability to interact with others in socially acceptable ways; and he had a moderate impairment in responding appropriately to usual work situations and in dealing with changes in a routine work setting. AR 455.

The ALJ accorded "partial weight" to Dr. Bowerman's opinion. AR 29. The ALJ accepted most of Dr. Bowerman's opinion, but she accorded less weight to her opinion that Plaintiff was markedly limited from a social standpoint, and particularly her opinion that Plaintiff could not interact with others in a socially acceptable way, finding it was inconsistent with her examination findings, Plaintiff's own subjective reports, and his treatment records. AR 29-30.

Plaintiff argues the ALJ erred in rejected Dr. Bowerman's opinion regarding social limitations because the assessed limitations would make it impossible to perform any sustained work. Pl.'s Mot. at 6. He further argues the ALJ improperly cherry-picked isolated observations and reports in the record while failing to view them in context. *Id.* at 6-9.

7

United States District Court
Northern District of California

### 1.   Legal Standard[5]

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  In this circuit, courts distinguish among the opinions of three types of physicians: (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant but do not treat him; and (3) non-examining physicians who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).  Thus, even where a treating or examining physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that are supported by substantial evidence" in the record.  *Garrison*, 759 F.3d at 1012 (internal quotations and citation omitted); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).  "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'"  *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996).

The "substantial evidence" standard requires an ALJ to "set[ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his [or her] interpretation thereof, and mak[e] findings." *Reddick*, 157 F.3d at 725 (citation omitted).  Conclusory statements by the ALJ are insufficient; he or she "must set forth his [or her] own interpretations and explain why

---

[5] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence."  82 Fed. Reg. 5844.  These final rules were effective as of March 27, 2017.  *Id.*  Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017.  *See, e.g.*, 20 C.F.R. § 404.1527 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 404.1520c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process).  Here, the agency's final decision was issued after the effective date of the final rules (April 2020), but Plaintiff filed his claim before (May 2016).  Thus, the rules that state they apply only to applications/claims filed on or after March 27, 2017 do not apply to this case.

they, rather than the doctors', are correct." *Id.* (citation omitted). An ALJ errs if he or she "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### 2. Analysis

The Court finds the ALJ properly evaluated Dr. Bowerman's opinion. An ALJ may accord less weight to a doctor's opinion that is inconsistent with the examination findings, a claimant's own reports, and the treatment records. *See* 20 C.F.R. § 404.1527(c)(4) (the more consistent a medical opinion is with the record as a whole, the more weight it is given). Here, as the ALJ pointed out, Dr. Bowerman's opinion that Plaintiff was markedly limited from a social standpoint, and particularly her opinion that Plaintiff could not interact with others in a socially acceptable way, was inconsistent with her observations of Plaintiff as initial irritable at the beginning of the examination but with a fuller range affect as the interview progressed. *Id.* It was also inconsistent with Dr. Bowerman's observation that Plaintiff made good eye contact during the examination and had normal speech. *Id.*; *see Houghton v. Comm'r Soc. Sec. Admin.*, 493 F. App'x 843, 845 (9th Cir. 2012) (ALJ properly discounted medical opinions that were "internally inconsistent, unsupported by [the doctor's] own treatment records or clinical findings, inconsistent with the record as a whole, and premised primarily on [the claimant's] subjective statements which the ALJ found unreliable"); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings," the more weight we will give it).

The ALJ also explained that Dr. Bowerman's assessment regarding Plaintiff's ability to interact with others was inconsistent with other evidence in the record. AR 29; *see* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Specifically, it conflicted with Plaintiff's own report that he was respectful of authority figures and treatment records noting that he was receptive and engaged during group therapy sessions. AR 29, 269, 849, 852, 854, 858, 866, 878, 882, 887, 895, 897, 900, 904, 913. Plaintiff argues that the report in which he stated he respected

1    authority figures also notes that he did not care about maintaining his own personal care (Pl.'s

2    Mot. at 8), but as Dr. Bowerman herself found, Plaintiff had adequate hygiene and dress.  AR 450,

3    453.  Plaintiff also points to his statement that he did not have friends and that he left jobs because

4    of fights with coworkers (Pl's Brief at 8), but he reported that he regularly talked to his gaming

5    acquaintances online, and the record reveals that he also stopped working for reasons other than

6    interpersonal conflicts, including a positive marijuana test.  AR 451.

7           With respect to his treatment records, which indicate he was receptive and engaged during

8    group therapy, Plaintiff argues that he stopped attending group therapy because of increased

9    anxiety when being around others.  Pl.'s Mot. at 9.  However, the two documents he relies on are

10    from December 2017 (AR 630, 958).  As Plaintiff's other records reveal, he participated in group

11    therapy in 2018 and as recently as 2019, during which time he was receptive and engaged.  AR 29,

12    849, 852, 854, 858, 866, 878, 882, 887, 895, 897, 900, 904, 913.  Though Plaintiff also contends

13    that he was noted to be angry or agitated during his individual counseling sessions, it is significant

14    that he was consistently noted as receptive and engaged in group therapy, indicating that he was

15    able to interact with others or, at the very least, have superficial interaction as the ALJ determined

16    in the RFC finding.  Indeed, even licensed clinical social worker (LCSW), Yelena Lavendar, who

17    conducted the individual and group therapy sessions, opined that Plaintiff was limited but could

18    satisfactorily interact appropriately with the general public, maintain socially appropriate behavior,

19    and adhere to basic standards of neatness and cleanliness.  AR 748.

20           Moreover, as the ALJ noted, Dr. Bowerman's opinion was contradicted by the other

21    medical opinions of record.  AR 30.  After reviewing the record, psychologist E. Adamo, Ph.D.,

22    opined that Plaintiff could interact with coworkers and supervisors on a casual/superficial basis

23    and could have contact with the public incidental to work.  AR 30, 85.  Pamela Hawkins, Ph.D.,

24    agreed with Dr. Adamo's assessment after considering the record.  AR 30, 101; *see* 20 C.F.R. §

25    404.1513a(b)(1) ("State agency medical or psychological consultants are highly qualified and

26    experts in Social Security disability evaluation.").  The ALJ accorded great weight to these

27    opinions, noting that both Dr. Adamo and Dr. Hawkins were experts in disability evaluation,

28    qualified physicians (both psychologists), and that they cited specific medical findings to support

United States District Court
Northern District of California

10

1    their opinions.  AR 30.  For example, Dr. Adamo noted that Plaintiff had no problems relating to

2    Dr. Bowerman and was independent in his functioning.  AR 81.  Dr. Hawkins noted that although

3    Plaintiff alleged a gradual worsening of his condition, his updated medical evidence of record

4    showed he had continued with psychiatric treatment and recently begun taking medication with

5    good results.  AR 96.  Thus, both opinions support the ALJ's finding that while Plaintiff did have

6    social limitations, he could occasionally interact with supervisors and have brief, superficial

7    interaction with coworkers and the public.  Further, where the record contains conflicting medical

8    evidence, "the ALJ is charged with determining credibility and resolving the conflict . . . ."

9    *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *see also Thomas*, 278 F.3d at 957 ("The

10   opinions of non-treating or non-examining physicians may also serve as substantial evidence when

11   the opinions are consistent with independent clinical findings or other evidence in the record").

12          Plaintiff argues the ALJ did not consider that he presented as "somewhat disheveled," had

13   poor insight and judgment, and had mildly impaired memory, attention, and concentration.  Pl.'s

14   Mot. at 7.  However, Plaintiff does not explain why this would preclude him from having

15   occasional interaction with supervisors or brief, superficial interaction with coworkers and the

16   public.  Though Plaintiff argues that employers "would not tolerate [a] disheveled appearance by

17   an employee," this is his opinion, and it is not clear that a disheveled appearance would interfere

18   with his ability to interact with others socially.  Moreover, Dr. Bowerman noted that Plaintiff was

19   only "somewhat disheveled" but was dressed casually in clean clothing, was adequately groomed,

20   and had good hygiene.  AR 450, 453.

21          Plaintiff also claims that his poor insight and judgment indicate he would have difficulty

22   interacting with others in socially acceptable ways.  Pl.'s Mot. at 7.  However, Dr. Bowerman

23   made no such statement; rather, she said Plaintiff's judgment appeared poor based on his answer

24   to one question – "What should you do if you find a stamped, addressed, sealed envelope lying on

25   the sidewalk?"  AR 454.  Plaintiff said he would leave it there.  *Id.*  It is unclear how his answer to

26   this question would be relevant to his ability to interact with others.  Plaintiff also states that his

27   poor judgment is consistent with his history of conflict with others and walking off jobs, but as the

28   ALJ pointed out, Plaintiff lost his last job because his boss overheard him complain about too

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    many hours, not for having a conflict with a co-worker, and he also lost a job after testing positive

2    for marijuana.  AR 29, 52, 54.  Additionally, as discussed further below, when Plaintiff took his

3    medication as instructed, his symptoms improved, including his mood and temper, and his

4    problems with emotional control and impulsivity seemed to appear when he stopped taking his

5    medication.  AR 26-30.  Notably, Plaintiff told Dr. Bowerman he was not taking any medication at

6    the time of his examination.  AR 450.  Thus, Dr. Bowerman's opinion does not account for

7    Plaintiff's condition when properly treated.

8         In sum, the ALJ properly evaluated Dr. Bowerman's opinion, according weight to her

9    opinion to the extent it was consistent with and supported by the record and rejecting that portion

10   of her opinion which was unsupported by the record, instead relying on the opinions of Drs.

11   Adamo and Hawkins.  *See* 20 C.F.R. § 404.1527(c)(6); *Magallanes v. Bowen*, 881 F.2d 747, 753

12   (9th Cir. 1989) (when weighing a medical opinion, an ALJ need not necessarily agree with

13   everything contained in that opinion and can consider some portions less significant than others

14   when evaluated against the other evidence of record).

15        Accordingly, the Court finds the ALJ properly evaluated Dr. Bowerman's opinion, and the

16   ALJ's decision must be affirmed.

17   **C.    Opinion of Licensed Clinical Social Worker Yelena Lavendar**

18        LCSW Lavendar completed a medical source statement for Plaintiff on October 15, 2018,

19   noting she treated Plaintiff weekly for the last year for bipolar disorder.  AR 745-50.  Ms.

20   Lavendar reported that she treated Plaintiff with medication support as well as individual and

21   group therapy, but he had no noticeable improvement in outburst severity or intensity.  AR 745.

22   Ms. Lavendar opined that Plaintiff's prognosis was poor as he experienced acute episodes of

23   severe depression, suicidal thinking, and poor insight and judgment.  *Id.*  She determined Plaintiff

24   was seriously limited, defined as off task from 11 to 20 percent of an eight-hour workday, in the

25   abilities to: set realistic goals or make plans independently of others, or deal with stress of

26   semiskilled and skilled work.  AR 748.  Ms. Lavendar explained that Plaintiff was unable to deal

27   with stress related to work and avoided being in public because of anxiety.  *Id.*  Tasks that would

28   increase stress included being criticized by supervisors, deadlines, working with other people,

dealing with the public, and dealing with supervisors.  AR 749.  Ms. Lavendar also opined that Plaintiff had a limited but satisfactory ability to understand and remember detailed instructions, carry out detailed instructions, interact appropriately with the general public, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness.  AR 748.  She concluded that Plaintiff would miss work more than four days a month because of his impairments.  AR 749.  When asked whether Plaintiff's impairments included alcohol or substance abuse and whether alcohol or substance abuse contributed to any of Plaintiff's limitations, Ms. Lavendar checked the box for "Not Applicable."  AR 750.

The ALJ accorded "partial weight" to Ms. Lavendar's assessment but found that "some of Ms. Lavendar's opinions are overly-restrictive, including her opinion that claimant will be absent from work in excess of four days per month."  AR 30.  The ALJ found this assessment did not "account for the claimant's good response to medications, as shown by the longitudinal medical evidence."  *Id.*  The ALJ also discounted Ms. Lavendar's assessment because she "made no mention of the claimant's apparent ongoing marijuana use."  *Id.*

Plaintiff argues the ALJ's reasons for rejecting Ms. Lavendar's assessment are insufficient for several reasons.  First, he argues that while the record shows some improvement with psychotropic medications, it also contains his subjective reports that medications had been ineffective in eliminating his symptoms.  Pl.'s Mot. at 11.  Second, he notes that Ms. Lavendar "was aware of [his] cannabis use . . . and her assessment confirmed she noted 'not applicable' as to whether any alcohol or substance use contributed to the assessed limitations."  *Id.* at 12.  Third, Plaintiff argues the ALJ erred in assigning greater weight to nonexamining state agency consultants because the last nonexamining reviewers' opinion was completed in December 2016, "well before [his] three hospitalizations or involuntary psychiatric holds because he was a danger to himself or others."  *Id.* at 13.

### 1.  Legal Standard

For claims filed before March 27, 2017, only licensed physicians and other qualified specialists were "acceptable medical sources" under 20 C.F.R. § 404.1513(a), and mental health counselors, licensed clinical social workers, and nurse practitioners were considered "other

1    sources" under 20 C.F.R. § 404.1513(d); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th

2    Cir. 2010) (applying the "other sources" standard to the testimony of a social worker); *Savage v.*

3    *Saul*, 2020 WL 2768934, at *8 (N.D. Cal. May 28, 2020) (noting change in regulations).  Under

4    the prior regulations, the ALJ can use these other medical source opinions in determining the

5    "severity of the individual's impairment(s) and how it affects the individual's ability to function."

6    20 C.F.R. § 404.1513(d).

7        To reject the competent testimony of "other" medical sources like Ms. Lavendar, the ALJ

8    need only give "reasons germane to each witness for doing so."  *Molina*, 674 F.3d at 1111

9    (quoting *Turner*, 613 F.3d at 1224).  In rejecting such testimony, the ALJ need not cite the specific

10   record so long as "arguably germane reasons" for dismissing the testimony are noted, even though

11   the ALJ does "not clearly link his determination to those reasons," and substantial evidence

12   supports the ALJ's decision.  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  The ALJ also

13   may "'draw inferences logically flowing from the evidence.'"  *Tommasetti*, 533 F.3d at 1040

14   (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

15       **2.    Analysis**

16       The Court finds the ALJ provided germane reasons for rejecting Ms. Lavendar's opinion

17   that Plaintiff would miss more than four days of work per month.  First, the ALJ reasonably

18   accorded more weight to the opinions of Drs. Adamo and Hawkins, both psychologists and

19   acceptable medical sources, neither of whom opined that Plaintiff would miss several days of

20   work per month or had limitations severe enough to preclude him from working.  AR 30; *see*

21   *Castle v. Colvin*, 567 F. App'x 495, 495 (9th Cir. 2014) (finding harmless ALJ's rejection of a

22   clinical social worker's opinion because she was not an acceptable medical source, because the

23   ALJ also rejected her testimony "because it contradicted the four acceptable medical sources'

24   opinions") (citing *Molina*, 674 F.3d at 1111); *Putnam v. Colvin*, 586 F. App'x 691, 693 (9th Cir.

25   2014) (ALJ properly discounted counselor's opinion that claimant had mental impairments that

26   precluded work activity, because she was not an acceptable medical source and her opinion was

27   contradicted by multiple doctors who determined that claimant's impairments were not severe).

28   Further, while Plaintiff argues the ALJ did not properly consider Ms. Lavendar's statement that he

United States District Court
Northern District of California

14

1   would be absent from work four or more times a month, Ms. Lavendar also opined that Plaintiff

2   had a limited but satisfactory ability to interact appropriately with the general public, maintain

3   socially appropriate behavior, and adhere to basic standards of neatness and cleanliness, which is

4   not only consistent with the ALJ's RFC finding, but also contrary to Dr. Bowerman's opinion,

5   which he asks this Court to accept.  Plaintiff fails to explain why the Court should accept Dr.

6   Bowerman's 2016 assessment regarding his ability to interact with others, which occurred when

7   Plaintiff was not taking any medication and before he received consistent treatment, while

8   simultaneously rejecting this portion of Ms. Lavendar's assessment regarding his ability to interact

9   with others, given in 2018 after he received treatment.  His reasoning also conflicts with his

10  contention that the opinions from Drs. Adamo and Hawkins should be accorded less weight

11  because they were given in 2016 and did not consider subsequent evidence.  Pl.'s Mot. at 13.  By

12  his own logic, the Court should also reject Dr. Bowerman's opinion, as it was given even earlier.

13  In fact, the most recent medical opinion is from Dr. Hawkins.

14          Second, the ALJ explained that Ms. Lavendar's statement did not account for Plaintiff's

15  good response to medication, as shown by the longitudinal medical evidence.  AR 30; *see, e.g.*,

16  AR 26-27, 348 (after starting medication, depression reduced, motivation improved, sleep is fine,

17  and socializing with friends), 494 (improved mood with medication), 630 (improved with

18  medication but stopped taking it and ended up in the hospital), 846 (improved compliance with

19  medication attributable to decrease in outbursts), 848 (outbursts decreased when on medication),

20  919 (improvement in mood reactivity and impulsivity since starting medication), 930 (slept well

21  after taking medication).  Despite Ms. Lavendar's statement that there was "no noticeable

22  improvement in outburst severity or intensity" with treatment, Plaintiff himself admits that the

23  record shows improvement with medication.  Pl.'s Mot. at 11.  Though he argues it was

24  "ineffective in eliminating his symptoms," *id.*, Plaintiff does not need to be symptom free to be

25  found not disabled.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that

26  individuals do not need to be symptom free to work as disability benefits are intended for "people

27  who are unable to work; awarding benefits in cases of nondisabling pain would expand the class

28  of recipients far beyond that contemplated in the statute").  Indeed, the ALJ included several

United States District Court
Northern District of California

1   limitations in the RFC finding to account for his claimed symptoms.

2          Third, the ALJ pointed out that Ms. Lavendar made no mention of Plaintiff's apparent

3   ongoing marijuana use, stating "Not Applicable" in response to a question about whether alcohol

4   or substance abuse contributed to Plaintiff's limitations.  AR 30, 750.  However, Plaintiff's

5   records indicate that his treating providers, including Paul Van Ravenswaay, M.D., and Thelma

6   Uche-Obasi, M.H.S., recommended that he stop using marijuana.  AR 28, 630 (advised to stop

7   using marijuana because of its effect on the "mood center"), 637 (advised to stop marijuana use).

8   If, as Plaintiff claims, Ms. Lavendar was aware of his marijuana use, and she didn't believe it

9   contributed to his limitations, it is unclear why she did not mark "No" rather than "Not

10  Applicable" when asked if substance abuse contributed to his limitations  AR 750.

11         Accordingly, the Court finds the ALJ provided germane reasons to discount Ms.

12  Lavendar's assessment, and the decision must be affirmed.

13  **D.      Plaintiff's Subjective Testimony**

14         Plaintiff testified that he had left several jobs because of anger outbursts at work and

15  inappropriate confrontations with coworkers.  AR 52, 54-55.  He also testified he was unable to

16  work a full-time job because of increased anger that caused violent reactions, "Just a little bit of

17  frustration builds up, like I can go from you know zero to a hundred within seconds sometimes.

18  Just the wrong thing being said to me, . . . it could be the fact that I just didn't get enough to start

19  me off in a bad mood, to someone saying something, to me just going completely berserk."  AR

20  55.  He experienced anger episodes/outbursts at least once a week, and had experienced them at

21  home with his parents, at the grocery store and restaurants, and as his doctor's appointments.  AR

22  55-57, 626-27, 886, 869.  After each anger episode, Plaintiff would suffer from depression and

23  shut down for a couple of hours to days.  AR 56-57.

24         The ALJ determined that Plaintiff's medically determinable impairments could reasonably

25  be expected to cause the alleged symptoms, but his statements concerning the intensity,

26  persistence and limiting effects of these symptoms are not entirely consistent with the medical

27  evidence and other evidence in the record.  AR 26.  Plaintiff argues the ALJ's reasons for rejecting

28  his symptom testimony are insufficient because (1) she used boilerplate language and (2) he need

United States District Court
Northern District of California

16

only establish a medically determinable impairment that could reasonably be expected to cause his symptoms, not that medical evidence supports the severity of his symptoms.  Pl.'s Mot. at 15-16.

### 1.    Legal Standard

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  And second, "if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "At the same time, the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina*, 674 F.3d at 1112 (citation and internal quotations omitted).  Along the same lines, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."  SSR 16-3P, 2016 WL 1119029, at *2.

In determining whether an individual's symptoms will reduce her capacities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms."  *Molina*, 674 F.3d at 1112 (citations and internal quotation marks omitted).  "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner."  SSR 16-3p, 2016 WL 1119029, at *7.

1

2.      **Analysis**

2          The Court finds the ALJ properly evaluated Plaintiff's subjective testimony.  First, as the

3    ALJ noted, Plaintiff's mental status examination findings did not support the limitations Plaintiff

4    alleged.  For example, mental status examination findings from February, July, August, and

5    September 2016 note a depressed mood but also report good hygiene and grooming, a cooperative

6    attitude, good eye contact, normal speech, an unremarkable thought process, normal attention and

7    concentration, normal memory, and good insight and judgment.  AR 27, 411, 459, 461-62, 464,

8    490.  In October 2016, Plaintiff presented as calm, cooperative, alert, and oriented with a pleasant

9    demeanor and good eye contact.  AR 27, 493.  Subsequent records also document objective

10   findings inconsistent with Plaintiff's complaints.  In May, August, and October 2018 and January

11   2019, records reveal Plaintiff was alert and cooperative with good social reciprocity,

12   normoproductive speech, a stable affect, linear thought process, relevant thought content, intact

13   cognition, intact insight and judgment, and no suicidal or homicidal ideation.  AR 27, 846, 871,

14   890, 919.  Dr. Bowerman's examination findings were also inconsistent with Plaintiff's

15   complaints, as her examination revealed Plaintiff was adequately groomed and casually dressed,

16   had clean clothing, good hygiene, a normal gait, made normal movements, and had good eye

17   contact.  AR 453.  Plaintiff had normal speech; logical, linear, and goal directed thought

18   processes; normal thought content; described his mood as "apathetic at best"; had an irritable

19   affect initially which gradually became more fully range; denied suicidal or homicidal ideation;

20   was oriented; had poor insight and judgment; appeared to have intellectual functioning in the high

21   average range; mildly impaired memory, attention, and concentration; and had a reasoning ability

22   at the abstract level.  AR 453-54.  In evaluating Plaintiff's testimony, the ALJ's consideration of

23   this objective medical evidence was appropriate.  *See* 20 C.F.R. § 404.1529(c)(2) (when

24   evaluating symptoms, ALJ considers consistency with objective medical evidence); *Molina*, 674

25   F.3d at 1113 (in discounting claimant's allegations of an inability to interact with others, ALJ

26   appropriately considered her presentation and demeanor on mental status examinations, where she

27   was "alert and oriented, maintained good eye contact, did not appear excessively anxious, spoke

28   coherently and fluently, smiled appropriately, and was congenial").

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Second, the record shows that Plaintiff's symptoms improved when he was compliant with treatment. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (in evaluating a claimant's symptoms, factors including the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms is considered). The ALJ noted several instances where Plaintiff reported improvement when he took his medication as prescribed. AR 26-29; *see Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). For example, in March 2014, Plaintiff reported having started medication about six weeks prior and said it had reduced his depression and helped improve his motivation such that he had started looking for work and reported socializing with friends again and sleeping "fine." AR 26, 348. He said he could manage his anger better and was less irritable. AR 348. In October 2016, Plaintiff said he was "happier with celexa" which he had been taking for one month and was very happy with the improved mood. AR 27, 494. In December 2017, Plaintiff reportedly had a "more stable mood" after being on medication, with fewer angry outbursts. AR 27, 754. In May 2018, Plaintiff's father reported that Plaintiff's mood reactivity and impulsivity had improved since being on medication. AR 27, 919. In July 2018, Plaintiff said his depression level was low when he was compliant with his medications, and his father reported the following month that the frequency and length of his outbursts had diminished. AR 27, 890, 903. In October 2018, Plaintiff's father reported that the frequency, severity, and length of Plaintiff's outbursts had diminished, with his last significant outburst occurring in February 2018 and said, "He's been doing pretty well." AR 27, 871. In January 2019, both Plaintiff and his father reported that the frequency, severity, and length of his outbursts had diminished, and improved compliance with his medication was "attributable to [the] decrease in outburst[s]." AR 27, 846. It was noted that Plaintiff's last significant outburst was in February 2018, and Plaintiff denied any medication side effects. AR 846. Another record the same month notes that his anger outbursts had decreased, and Plaintiff said he had been doing "ok" and had been taking his medications pretty regularly. AR 27, 848. Such "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability" based on a mental impairment. *Wellington v. Berryhill*, 878 F.3d

19

1  867, 876 (9th Cir. 2017); *Mead v. Astrue*, 330 F. App'x 646, 648 (9th Cir. 2009) (ALJ properly

2  discounted claimant's self-reports where treatment notes indicated that her depression had

3  improved, she responded well to treatment, and she could perform activities of daily living) (citing

4  *Thomas*, 278 F.3d at 958-59); *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (ALJ properly

5  considered the claimant's daily activities, treating therapist notes, and evidence suggesting he

6  responded well to treatment in rejecting claimant's testimony).

7            Further, although Plaintiff showed improvement when compliant with treatment, Plaintiff

8  often failed to follow his prescribed treatment.  This further weighs against his complaints.  *See*

9  SSR 16-3p ("We will consider an individual's attempts to seek medical treatment for symptoms

10  and to follow treatment once it is prescribed" when evaluating subjective symptom complaints);

11  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("ALJ is permitted to consider lack of

12  treatment in his credibility determination").  Despite alleging disability beginning in November

13  2015, Dr. Bowerman reported in August 2016 that Plaintiff had just recently started seeing a

14  counselor and that Plaintiff was not taking any medication.  AR 450-51.  The record shows that,

15  even in November 2017, Plaintiff reported that he was not currently in any kind of psychiatric

16  treatment.  AR 633.  The record also contains instances documenting Plaintiff failing to take his

17  medication as prescribed.  AR 26-32, 460 (8/25/16: not currently taking any medication routinely),

18  751 (10/19/17: "Client said he hadn't taken his medication for quite a while"), 604 (10/24/17: had

19  stopped taking his medication approximately one month prior), 886 (9/4/18: Plaintiff missed a

20  couple days of his medication), 933 (3/1/18: father reported Plaintiff reluctant to take his

21  medication and his medication was almost full), 936 (2/21/18: father concerned that his son does

22  not wish to follow his medication regimen).  In March 2018 Plaintiff reported staying up late at

23  night playing video games and only getting a few hours of sleep, and he said he would forget to

24  take his medication when he was too tired, thus prompting his treating provider to discuss the

25  importance of taking his medication daily as directed and practicing good sleep hygiene.  AR 27,

26  931.  And, as the record shows, Plaintiff appeared to be more agitated and angrier when he

27  stopped taking his medication.  AR 26-28.

28            Additionally, though Plaintiff was advised to stop using marijuana, he continued his use.

United States District Court
Northern District of California

20

AR 27-28, 630 (advised to stop using marijuana because of its effect on the "mood center"), 632 (uses marijuana several times per day), 635 (smokes marijuana daily), 637 (advised to stop marijuana use).  Despite his complaints of difficulty sleeping, Plaintiff also initially declined treatment for obstructive sleep apnea and then failed to use his CPAP machine.  AR 28-29, 413 ("declining OSA treatment"), 632 (has obstructive sleep apnea but "does not wear a mask"), 754 (same), 835 (father reported in March 2019 that Plaintiff went to see his physician about getting a different piece for his CPAP), 871 ("doesn't use CPAP mask due to not liking the sound of the air flow), 890 (same); *see Molina*, 674 F.3d at 1113 (an ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in assessing a claimant's credibility) (citation omitted).  The ALJ properly found Plaintiff's failure to follow treatment was inconsistent with his complaints.

As the ALJ also noted, though Plaintiff said he has left some jobs previously due to conflicts with other workers, his records show that he also stopped working for other reasons.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) ("the ALJ satisfied the *Bunnell* standard by providing specific, cogent reasons for disregarding [claimant's] testimony," "[f]or example, the ALJ stated that she found [claimant's] subjective pain complaints not credible because, inter alia: (1) [claimant] stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured").  For example, Plaintiff reported that he lost a job because he tested positive for marijuana.  AR 29, 52, 345, 633; *see Henseley v. Colvin*, 600 F. App'x 526, 527 (9th Cir. 2015) ("The ALJ further noted that [claimant] stopped working, in part, because of her positive drug test rather than an injury") (citing *Bruton*, 268 F.3d at 828).  He also lost his last job because his boss overheard him complain about too many hours.  AR 29, 54; *see Williams v. Colvin*, 609 F. App'x 495, 496 (9th Cir. 2015) (ALJ properly found claimant not credible, relying on claimant's "own report that he had stopped working in 2007 not because of medical problems but, rather, because he was laid off") (citing *Bruton*, 268 F.3d at 828 (holding that leaving work for non-medical reasons is a proper factor in assessing credibility)).

Finally, the ALJ identified other inconsistencies that undermined Plaintiff's allegations.  *See* 20 C.F.R. § 404.1529(c)(3) (in addition to considering objective medical evidence, ALJ

1    considers whether and to what extent the claimant's subjective statements are consistent with other

2    evidence in the record).  The ALJ found Plaintiff's daily activities did not support his claim of a

3    disabling mental impairment, including that he shopped in stores, paid his bills, could handle a

4    savings account and use a checkbook/money orders, played video and computer games, and

5    checked the news on his phone.  AR 28, 266, 452, 459, 835, 931.  As Plaintiff told Dr. Bowerman,

6    he did his own shopping two or three times weekly and did not require assistance; could drive

7    himself to appointments and for personal errands; washed the dishes; did the laundry; could

8    complete household tasks in a timely fashion; prepared his own meals; could care for his own

9    grooming; could manage a checking account; and enjoyed watching television and playing video

10   games.  AR 452; *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ

11   sufficiently explained his reasons for discrediting claimant's testimony when he said that the

12   "record reflects that the claimant has normal activities of daily living, including cooking, house

13   cleaning, doing laundry, and helping her husband in managing finances . . . .  These activities tend

14   to suggest that the claimant may still be capable of performing the basic demands of competitive,

15   remunerative, unskilled work on a sustained basis"); *Burch*, 400 F.3d at 680-81 (claimant's ability

16   to care for her own personal needs, cook, clean, shop, manage her finances, and interact with her

17   nephew and boyfriend suggested she was quite functional).  Everyday activities may be grounds

18   for discrediting a claimant's testimony "to the extent that they contradict claims of a totally

19   debilitating impairment."  *Molina*, 674 F.3d at 1113.  Thus, the ALJ reasonably found that

20   Plaintiff's daily activities indicated he was not as limited as alleged.  As the Ninth Circuit has

21   stated, "[a]lthough the evidence of [the claimant's] daily activities may also admit of an

22   interpretation more favorable to [her], the ALJ's interpretation was rational, and '[w]e must

23   uphold the ALJ's decision where the evidence is susceptible to more than one rational

24   interpretation.'"  *Burch*, 400 F.3d at 680-81.

25          Plaintiff argues it was improper for the ALJ to consider his use of cannabis because he

26   believed it helped his mental health symptoms by calming him down.  Pl.'s Mot. at 17.  However,

27   he provides no authority establishing that his belief is a sufficient reason to reject his treating

28   providers' advice to the contrary.  Moreover, it was not just his noncompliance with cannabis that

United States District Court
Northern District of California

1    was an issue, but noncompliance with all treatment including medications and CPAP use.  Though

2    Plaintiff also claims that the ALJ was "cherry-picking" evidence and focusing on periods of

3    improvement when he was on medication, Plaintiff's records do not document improvement from

4    medication once or twice, but several times during the relevant period.

5          Plaintiff also notes he was psychiatrically hospitalized or held for psychiatric observation

6    on three occasions during the time period at issue.  Pl's Mot. at 18.  However, Plaintiff appears to

7    have been noncompliant with treatment prior to the first two instances, and he had a normal

8    mental status examination and was discharged home in the third instance.  In October 2017,

9    Plaintiff was placed on a psychiatric hold.  AR 27, 595.  At the time, he reported that he had

10   stopped taking his medication one month prior, and he also tested positive for cannabis.  AR 27,

11   603-04.  On February 20, 2018, Plaintiff presented for a psychiatric evaluation but did not meet

12   the 5150 criteria.  AR 27, 941.  Plaintiff stated he did not want to take his psychiatric medication,

13   and the following day, his father said he was concerned that Plaintiff did not want to follow his

14   medication regimen and was not getting enough sleep.  AR 936, 939.  On March 1, 2018,

15   Plaintiff's father again reported that Plaintiff was very reluctant to take his medications and that

16   when he checked Plaintiff's medication bottle, it was almost full.  AR 933.  On March 8, 2018,

17   Plaintiff admitted that he stayed up late at night playing video games and would forget to take his

18   medications when he was tired.  AR 931.  Finally, on March 10, 2019, Plaintiff was seen for a

19   psychiatric evaluation, during which his increased risk factors were noted to be daily marijuana

20   smoking and his noncompliance with prescribed medication.  AR 751-53, 837.  However, he had a

21   normal mood, affect, memory, and judgment, and he was discharged home.  AR 1232-33.

22   Contrary to Plaintiff's contention, the evidence supports a finding that his symptoms could be

23   controlled with medication, and that they increased when he was noncompliant.  *See Wellington*,

24   878 F.3d at 876 ("Symptoms may wax and wane during the progression of a mental disorder," but

25   they "may also subside during treatment" and "[t]hat is what happened here . . . .").

26         In sum, the ALJ provided valid reasons for finding Plaintiff's subjective complaints

27   inconsistent with the record.  Further, even if the Court disagreed with one of the above reasons,

28   the ALJ provided other specific, independent, and well supported bases for discounting Plaintiff's

United States District Court
Northern District of California

23

allegations, and her finding must therefore be upheld.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (upholding the ALJ's overall credibility finding even though two of the credibility factors the ALJ considered were found invalid).  Where, as here, the ALJ's findings are rational and supported by substantial evidence in the record, the decision should not be second-guessed.  *See Thomas*, 278 F.3d at 959.  Accordingly, the Court must affirm.

## VI.    CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: February 11, 2022

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California